# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

| | | |
|---|---|---|
| JOSEPH ESPOSITO, individually and on behalf of all others similarly situated<br>c/o 1825 K St., NW, Suite 750<br>Washington, DC 20006 | : : : : : : | |
| *Plaintiff,* | : : | |
| v. | : : : | Case No.  6:23CV00058 |
| CENTRA HEALTH, INC.<br>1920 Atherholt Rd,<br>Lynchburg, VA, 24501-0000 | : : : : : | |
| Serve:<br>Alison Ferguson Gobble<br>1901 Tate Springs Rd.<br>Lynchburg, VA, 24501-1109 | : : : : : : | : |
| VIRGINIA BAPTIST HOMES, INCORPORATED<br>3961 Stillman Pkwy<br>Glen Allen, VA, 23060, USA | : : : : : | |
| Serve:<br>Christopher Markwith<br>3961 Stillman Pkwy<br>Glen Allen, VA, 23060 - 0000 | : : : : : : | |
| *Defendants.* | : | |

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/25/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

## COLLECTIVE ACTION COMPLAINT

Plaintiff Joseph Esposito, by and through undersigned counsel, and on behalf of himself and all others similarly situated, brings this collective action complaint against Defendants Centra Health, Inc. ("Centra Health") and Virginia Baptist Homes, Incorporated ("Virginia Baptist Homes"), and alleges as follows:

## NATURE OF THE CASE

1.      This is a collective action arising out of Defendants' systematic, knowing, and willful failure to pay Plaintiff and others similarly situated to him overtime and minimum wages owed in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Virginia Minimum Wage Act, Virginia Code § 40.1-28.8 *et seq.* ("VMWA"), and the Virginia Wage Payment Act, Virginia Code § 40.1-29 *et seq.* ("VWPA").

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those state law claims arise out of the same nucleus of operative fact as Plaintiff's FLSA claims.

4.      Venue is proper in this Court because Plaintiff was formerly employed in Lynchburg, Virginia, by Defendants, and a substantial part of the acts or omissions giving rise to the allegations herein occurred in the Western District of Virginia.

## THE PARTIES

5.      Plaintiff Joseph Esposito resides in Bedford, Virginia.

6.      Defendant Centra Health is a corporation formed under the laws of the Commonwealth of Virginia with its principal place of business in Lynchburg, Virginia.

7.      Defendant Centra Health owns and operates various hospitals and other medical service facilities in central and southern Virginia.

2

8. From at least July 28, 2014, until on or around October 1, 2021, Defendant Centra Health owned and operated The Summit, an assisted living facility located in Lynchburg, Virginia.

9. Defendant Virginia Baptist Homes, which operates under the fictitious name "Lifespire of Virginia," is a corporation formed under the laws of the Commonwealth of Virginia with its principal place of business in Glen Allen, Virginia.

10. From approximately October 1, 2021 to present, Defendant Virginia Baptist Homes has owned and operated The Summit, which it purchased from Defendant Centra Health on or around October 1, 2021.

## COVERAGE

11. At all times pertinent to the allegations herein, either or both of the Defendants were Plaintiff's "employers" as defined in the FLSA, Virginia Code § 40.1-2, and Virginia Code § 40.1-28.9.

12. At all times pertinent to the allegations herein, Defendants were enterprises engaged in commerce under the FLSA, because they both individually had annual gross sales of more than $500,000.00.

13. At all times pertinent to the allegations herein, Plaintiff and all similarly situated employees were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203, 206 and 207.

## FACTS

14. Plaintiff was employed with Defendants – first by Defendant Centra Health, and later by Defendant Virginia Baptist Homes – from on or around July 28, 2014, until sometime in or around early 2022.

15. Plaintiff worked as a Facility Supervisor from the start of his employment until on or around February 12, 2018, when his title changed to Mechanic II.

16. At all times pertinent to the allegations herein, Plaintiff's primary job function was to tend to general facility maintenance and repair issues as they arose.

17. At all times pertinent to the allegations herein, Plaintiff's regular work schedule was 10 hours a day, Monday, Tuesday, Thursday, and Friday.

18. In addition to his regular work schedule, Plaintiff was sometimes required to be "on-call," during which times he was required to be available to promptly respond to facility maintenance and repair issues at The Summit as they arose outside of his regular work schedule.

19. In or around January 2021, Defendant Centra Health began paying its on-call employees at The Summit $5 an hour for time spent on-call. Prior to then, Defendant Centra Health had not paid its on-call employees at The Summit for time spent on-call.

20. At all times pertinent to the allegations herein, Plaintiff was required to be on-call every other week.

21. During the weeks when Plaintiff was not on-call, a colleague of his at The Summit who performed substantially similar duties to those of Plaintiff, Timothy Colbird, was on-call.

22. When Plaintiff was on-call, the activities that he could engage in were substantially limited, as he was required to remain close to The Summit at all times, thus substantially limiting his ability to travel and move freely during those times, and substantially limiting his ability to engage in activities that might prevent him from promptly responding to a maintenance or repair call from The Summit.

23. At all times pertinent to the allegations herein, Plaintiff typically spent approximately 5-10 hours per month responding to service calls and performing facility maintenance and repair work outside of his regular work schedule pursuant to his on-call duties.

24. Because Plaintiff's regular work schedule – not including on-call time – consisted of a 40-hour week, any and all, or substantially any and all, time that Plaintiff spent responding to service calls and/or performing facility maintenance and repair work outside of his regular work schedule was time spent working in excess of 40 hours in a single week.

25. At all times pertinent to the allegations herein, for any hours that Plaintiff worked in excess of 40 in a single week – apart from those during which Plaintiff was on-call but not responding to a maintenance or repair call, for which he was paid $5 per hour beginning in or around January 2021 – Defendant Centra Health paid Plaintiff one and one-half times his straight hourly rate – i.e., the rate he was paid for hours worked during his regular 40-hour weekly schedule.

26. In computing Plaintiff's overtime rate, Defendant Centra Health did not take into account the $5 per hour that Plaintiff earned while in on-call status.

27. Upon information and belief, Defendant Centra Health's practice of paying its on-call employees $5 per hour for time spent on call but not taking that pay into account in computing Plaintiff's overtime rate extended to all, or substantially all, of the assisted living and/or medical care facilities that it owned and/or operated.

28. On or around October 1, 2021, Defendant Centra Health sold The Summit and three other assisted living facilities – Guggenheimer Health and Rehab (located in

5

Lynchburg, Virginia), Oakwood Manor (located in Bedford, Virginia), and Fairmont Crossing (located in Amherst, Virginia) (collectively with The Summit, the "Purchased Facilities") – to Defendant Virginia Baptist Homes.

29. Following its purchase of the Purchased Facilities, Defendant Virginia Baptist Homes maintained the practice of paying employees at the Purchased Facilities $5 per hour for on-call time until on or around December 31, 2021, when it discontinued that practice and altogether failed to pay its employees for on-call time.

## COLLECTIVE ACTION ALLEGATIONS

30. Plaintiff brings this action under the collective action provisions of the FLSA and the VWPA on behalf of himself and the following class of individuals:

> All individuals who were, are, or will be employed by either or both of the Defendants in positions that required them to serve in an "on-call" status at any assisted living or medical care facility located in the Commonwealth of Virginia at any time during the period beginning three (3) years prior to the commencement of this action and continuing through the date of judgment or final disposition of this action (the "Recovery Period").

31. Members of the collective class are similarly situated.

32. Members of the collective class have substantially similar job requirements and pay provisions and are subject to common practices, policies, or plans that fail to properly compensate them for overtime worked and/or minimum wages due.

33. These similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Members of the proposed collective class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b) and Virginia Code §§ 40.1-29(J).

34. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiff and those similarly situated.

35. Plaintiff consents in writing to assert his claims for unpaid wages under the FLSA and the VWPA pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is filed with the Court as Exhibit A to this Complaint. As this case proceeds, it is likely that others will file consent forms and join this action as opt-in plaintiffs.

36. Plaintiff requests that he be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b) and Virginia Code §§ 40.1-29(J).

### COUNT I: FAILURE TO PAY OVERTIME UNDER THE FAIR LABOR STANDARDS ACT (29 U.S.C. § 201 *et seq.*)

37. Plaintiff repeats and realleges the foregoing paragraphs as though each were set forth fully herein.

38. Plaintiff's on-call time was compensable, as that time was spent primarily for the benefit of the Defendants. When Plaintiff was on-call, the activities that he could engage in were substantially limited. Among other things, he was required to remain close to The Summit at all times, such that he could promptly respond to maintenance calls from the facility as they arose, including calls for emergency repairs with respect to which a failure to promptly respond could adversely affect the health or well-being of the facility's residents. Being required to promptly respond to maintenance calls from The Summit as they arose substantially limited Plaintiff's ability to travel and move freely while on-call, or to engage in activities that might prevent him from promptly responding to service calls from The Summit as they arose.

7

39. Because all, or substantially all, of Plaintiff's on-call hours were hours worked in addition to his standard 40-hour workweek, Defendants were required to pay him one and one-half times his regular hourly rate for his on-call hours.

40. Defendants failed and refused to pay Plaintiff one and one-half times his regular hourly rate for his on-call hours, instead paying him $5 per hour for those hours prior to January 1, 2022, and paying him nothing at all for those hours from that date forward.

41. As a result of Defendants' failure to pay Plaintiff one and one-half times his regular hourly rate for his on-call hours, Plaintiff is entitled to damages and other available relief.

42. Alternatively, if Plaintiff's time spent on-call did not constitute compensable hours worked under the FLSA, Defendants' $5 hourly payments to Plaintiff still qualified as remuneration that should have been included in the determination of his regular hourly rate under the FLSA for purposes of computing his overtime rate.

43. However, in determining Plaintiff's regular hourly rate, Defendants did not take into account the $5 per hour that Plaintiff earned while in on-call status, and instead simply used his straight hourly rate – $24.65 per hour when his employment at The Summit ended – as his regular hourly rate for purposes of computing overtime due.

44. As a result of failing to include Plaintiff's $5 per hour on-call pay when determining Plaintiff's regular hourly rate, Defendants failed to apply the correct regular hourly rate in computing overtime due to Plaintiff, applying a rate that was lower than it should have been.

45. By applying a regular hourly rate that was lower than it should have been, Defendants underpaid Plaintiff for his overtime hours worked.

8

46.     As a result of Defendants underpaying him for his overtime hours worked, Plaintiff is entitled to damages and other relief available under the FLSA.

47.     Defendants' failure to pay Plaintiff overtime pay owed to him was knowing, willful, and not in good faith.

### COUNT II: FAILURE TO PAY OVERTIME UNDER THE VWPA
### (Virginia Code § 40.1-29 *et seq.*)

48.     Plaintiff repeats and realleges the foregoing paragraphs as though each were set forth fully herein.

49.     Plaintiff's on-call time was compensable, as that time was spent primarily for the benefit of the Defendants.  When Plaintiff was on-call, the activities that he could engage in were substantially limited.  Among other things, he was required to remain close to The Summit at all times, such that he could promptly respond to maintenance calls from the facility as they arose, including calls for emergency repairs with respect to which a failure to promptly respond could adversely affect the health or well-being of the facility's residents.  Being required to promptly respond to maintenance calls from The Summit as they arose substantially limited Plaintiff's ability to travel and move freely while on-call, or to engage in activities that might prevent him from promptly responding to service calls from The Summit as they arose.

50.     Because all, or substantially all, of Plaintiff's on-call hours were hours worked in addition to his standard 40-hour workweek, Defendants were required to pay him one and one-half times his regular hourly rate for his on-call hours.

51.     Defendants failed and refused to pay Plaintiff one and one-half times his regular hourly rate for his on-call hours, instead paying him $5 per hour for those hours prior to January 1, 2022, and paying him nothing at all for those hours from that date forward.

9

52. As a result of Defendants' failure to pay Plaintiff one and one-half times his regular hourly rate for his on-call hours, Plaintiff is entitled to damages and other available relief.

53. Alternatively, if Plaintiff's time spent on-call did not constitute compensable hours worked under the VWPA, Defendants' $5 hourly payments to Plaintiff still qualified as remuneration that should have been included in the determination of his regular hourly rate under the VWPA for purposes of computing his overtime rate.

54. However, in determining Plaintiff's regular hourly rate, Defendants did not take into account the $5 per hour that Plaintiff earned while in on-call status, and instead simply used his straight hourly rate – $24.65 per hour when his employment at The Summit ended – as his regular hourly rate for purposes of computing overtime due.

55. As a result of failing to include Plaintiff's $5 per hour on-call pay when determining Plaintiff's regular hourly rate, Defendants failed to apply the correct regular hourly rate in computing overtime due to Plaintiff, applying a rate that was lower than it should have been.

56. By applying a regular hourly rate that was lower than it should have been, Defendants underpaid Plaintiff for his overtime hours worked.

57. As a result of Defendants underpaying him for his overtime hours worked, Plaintiff is entitled to damages and other relief available under the VWPA.

58. Defendants' failure to pay Plaintiff overtime pay owed to him was knowing, willful, and not in good faith.

## COUNT III: FAILURE TO PAY MINIMUM WAGE UNDER THE FLSA
### (29 U.S.C. § 201 *et seq.*)

59. Plaintiff repeats and realleges the foregoing paragraphs as though each were set forth fully herein.

60. To the extent that any of Plaintiff's on-call time did not constitute hours worked in excess of 40 in a single workweek, then he was owed minimum wage for that time.

61. At all times pertinent to the allegations herein, the minimum hourly wage required by the FLSA was $7.25 per hour.

62. To the extent that any of Plaintiff's on-call time did not constitute hours worked in excess of 40 in a single workweek, Defendants failed to pay Plaintiff minimum wage for those hours, as they paid him $5 per hour for his on-call time prior to January 1, 2022, and did not pay him at all for that time thereafter.

63. As a result of Defendants' failure to pay Plaintiff minimum wages owed, Plaintiff is entitled to damages and other relief available under the FLSA.

64. Defendants' failure to pay Plaintiff minimum wages owed was knowing, willful, and not in good faith.

## COUNT IV: FAILURE TO PAY MINIMUM WAGE UNDER THE VMWA
### (Virginia Code § 40.1-28.8 *et seq.*)

65. Plaintiff repeats and realleges the foregoing paragraphs as though each were set forth fully herein.

66. To the extent that any of Plaintiff's on-call time did not constitute hours worked in excess of 40 in a single workweek, then he was owed minimum wage for that time.

67. From May 1, 2021 until January 1, 2022, the minimum wage under the VMWA was $9.50 per hour.

68. From January 1, 2022 until January 1, 2023, the minimum wage under the VMWA was $11.00 per hour.

69. From January 1, 2023 to present, the minimum wages under the VMWA was $12.00 per hour.

70. To the extent that any of Plaintiff's on-call time did not constitute hours worked in excess of 40 in a single workweek, Defendants failed to pay Plaintiff minimum wage for those hours, as they paid him $5 per hour for his on-call time prior to January 1, 2022, and did not pay him at all for that time thereafter.

71. As a result of Defendants' failure to pay Plaintiff minimum wages owed, Plaintiff is entitled to damages and other relief available under the VMWA.

72. Defendants' failure to pay Plaintiff minimum wages owed was knowing, willful, and not in good faith.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendants as follows:

1. The opportunity to notify other similarly situated employees to opt into this action pursuant to 29 U.S.C. § 216(b) and Virginia Code § 40.1-29(J);

2. For certification of this action as a collective action under the FLSA, the VMWA, and the VWPA, including certifying the Class alleged by Plaintiff;

3. Compensation for all unpaid wages owed, including unpaid minimum and overtime wages;

4. Liquidated damages pursuant to 29 U.S.C. § 216(b), Virginia Code § 40.1-29(J), and Virginia Code § 40.1-28.12;

5. Pre- and post-judgment interest;

6. Reasonable attorneys' fees and costs; and

7. Any other legal or equitable relief that this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 25, 2023                                Respectfully submitted,


Alan Lescht and Associates, P.C.

/s/ Ellen Renaud
Ellen Renaud (Bar No. 47326)
1825 K Street, NW, Suite 750
Washington, DC 20006
T: (202) 852-8483
F: (202) 463-6067
Ellen.renaud@leschtlaw.com

*Attorney for Plaintiff*

13